UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER REECE,

       Petitioner,

                                           Case No. 12-cv-14244

v.

                                           HON. MARK A. GOLDSMITH

STEVEN RIVARD,

       Respondent.

_____/

**OPINION AND ORDER
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; (2) DENYING
CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO PROCEED IN
FORMA PAUPERIS ON APPEAL**

**I. INTRODUCTION**

Petitioner Christopher Reece, confined at the Marquette Branch Prison in Marquette, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his conviction for armed robbery, under an aiding and abetting theory, Mich. Comp. Laws § 750.529. For the reasons explained fully below, the Court denies the petition for writ of habeas corpus.

**II. BACKGROUND**

Petitioner was convicted following a jury trial in Kalamazoo County Circuit Court. His conviction arose from a robbery at the Déjà Vu strip club in Kalamazoo, Michigan on January 9, 2007. Charles Harris, the manager at Déjà Vu, testified that he was counting money with doorman Grant Reef, when Petitioner entered the business at approximately 1:30 a.m. He told Petitioner that the business was closing early that night; Petitioner left. Approximately three minutes later, two men entered wearing nylons over their faces. One of the men was carrying a

1

semiautomatic gun, while the other man had his hand in his pocket. The man carrying the gun demanded money, and Harris gave him $173.

Keith Myers, a security guard at Déjà Vu, ran outside after learning the club had been robbed. He heard a car ignition start, then saw a Jeep Cherokee appear from behind a building and drive away at a high rate of speed with its headlights off.

Kristine Myers testified that Petitioner called her to ask for a ride to Déjà Vu on the evening of January 9, 2007. She picked up Petitioner and his two male friends in her Jeep Cherokee. When they arrived at Déjà Vu, all three men exited the vehicle. Petitioner returned first and told her to drive across the street and wait. The other two men then returned and told her to leave, which she did. She was then told to stop the vehicle a short time later. Petitioner and one of the other men exited the vehicle and changed clothes. The other man reentered the vehicle, but Petitioner did not. Myers was later stopped by police. She cooperated with them and led police to a handgun and clothing that the men had discarded behind a nearby factory. Myers was ultimately charged with armed robbery and pleaded guilty to a lesser charge, which required her to testify at Petitioner's trial.

Calvin Earl Green, Jr., testified that he and his brother Marco Brown were with Petitioner on January 9, 2007. A woman, whose name Green did not know, drove them to Déjà Vu. She parked her Jeep across the street from the club. Green thought he saw Petitioner with a gun. Green, Brown, Petitioner, and the woman talked about robbing the club. Petitioner went into the club first. When he came back, Green got a gun from his brother, which he assumed had been given to his brother by Petitioner. Green and his brother disguised themselves, entered the club, pointed the gun at the workers, and demanded money. After they were given a bag of money, they got back into the Jeep, which the woman then drove away. Petitioner told the driver to stop

behind a warehouse. He and Brown exited the vehicle and changed clothes. Brown returned to the vehicle, but Petitioner did not. The Jeep was later stopped by police and Green, Brown, and the woman were placed under arrest. Green was charged with armed robbery, conspiracy to commit armed robbery, and using a firearm during the commission of a felony. He pleaded guilty to armed robbery pursuant to a plea agreement that required him to testify at Petitioner's trial.

Marco Brown also testified pursuant to a plea agreement, which required him to testify at Petitioner's trial. His testimony was generally consistent with his brother's testimony.

Brett Pittelkow, a detective with the City of Kalamazoo police department, testified that he interviewed Petitioner in connection with the robbery at Déjà Vu. Petitioner admitted to Detective Pittelkow that he was at Déjà Vu with Brown and Green before the robbery. Petitioner said that Brown and Green told him that they intended to rob the club and Petitioner told them they should wait. He admitted that he also told Brown and Green that the Jeep was parked across the street from the club.

Petitioner was convicted of armed robbery and was acquitted of conspiracy to commit armed robbery. On October 15, 2007, he was sentenced to 10-to-30 years' imprisonment.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. People v. Reece, No. 281661, 2009 WL 1101523 (Mich. Ct. App. Apr. 23, 2009) (per curiam). The Michigan Supreme Court denied leave to appeal. People v. Reece, 485 Mich. 976 (2009).

Petitioner returned to the trial court and filed a post-conviction motion for relief from judgment, motion for new trial, and request for an evidentiary hearing. The trial court appointed counsel to represent Petitioner and counsel filed a new motion for relief from judgment (Dkt. 12-11). The trial court denied the motion for relief from judgment. People v. Reece, No. D07-

0091-FC, Op. & Order (Kalamazoo Cnty. Cir. Ct. Feb. 10, 2011) (Dkt. 12-13). The Michigan appellate courts denied Petitioner leave to appeal. People v. Reece, No. 304189, Order (Mich. Ct. App. Dec. 19, 2011) (Dkt. 12-14); People v. Reece, 492 Mich. 865 (2012).

Petitioner now seeks habeas relief on the following grounds:

i. "Kalamazoo County assistant prosecuting attorney committed misconduct throughout Petitioners [sic] trial denying Petitioner his United States constitutional right to a fair trial and due process under the Fifth and Fourteenth Amendments";

ii. "Petitioners [sic] trial counsel did not provide effective assistance of trial counsel violating Petitioner his United States constitutional right to a fair trial";

iii. "Petitioners [sic] appellate counsel did not provide effective assistance of appellate counsel violating Petitioners [sic] United States constitutional rights to effective assistance of counsel and due process under the Sixth and Fourteenth Amendments";

iv. "Kalamazoo County assistant prosecuting attorney did not offer sufficient evidence even in a light most favorable to the prosecution, a rational trier of fact could [not] have found proof beyond a reasonable doubt, thus violating Petitioners [sic] constitutional right to due process"; and,

v. "Petitioner has exhausted all state court remedies and is entitled to 28 U.S.C. [§] 2254 habeas relief after a showing that Petitioner is being held by Respondent in violation of several constitutional provisions."

Pet. at 10 (cm/ecf page).

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

> merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was

5

unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. ANALYSIS

#### A. Procedural Default

Respondent argues that Petitioner's first two habeas claims are procedurally defaulted, because they were not raised on direct review in state court. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

#### B. The Merits of Petitioner's Claims

##### 1. Claim One: Prosecutorial Misconduct Claim

Petitioner first asserts that he is entitled to habeas corpus relief, because the prosecutor engaged in misconduct by misrepresenting the facts in evidence, vouching for the credibility of prosecution witnesses, and calling Petitioner a liar.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in Darden v. Wainwright, 477 U.S. 168, 181 (1986). Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012). In Darden, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction

7

a denial of due process.'" 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Parker, 132 S. Ct. at 2155 (quoting Harrington, 562 U.S. at 103).

First, Petitioner argues that the prosecutor misstated the facts in evidence when he stated, during closing argument and rebuttal, that co-defendants Calvin Green and Marco Brown both told police that Petitioner participated in the robbery and provided the gun, and stated during opening statement that Petitioner told Brown and Green where the getaway vehicle would be parked, and that Petitioner had scoped out the strip club before the robbery. The last state court to issue a reasoned opinion regarding this claim, the Michigan trial court, held that the record did not support Petitioner's allegations. The trial court held that the prosecutor's comments regarding Brown's and Green's statements to police were supported by their trial testimony, and that the prosecutor's arguments regarding Petitioner's participation in and knowledge of the robbery did not mislead the jury. See 2/10/2011 Op. & Order (Dkt. 12-13).

"Misrepresenting facts in evidence can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.'" Washington v. Hofbauer, 228 F.3d 689, 700 (6th Cir. 2000) (quoting Donnelly, 416 U.S. at 646). Here, Petitioner has not shown that the trial court was mistaken in concluding that the record supported the prosecutor's comments regarding the consistency of Brown's and Green's testimony. Nor has he shown that the prosecutor misstated the evidence regarding Petitioner's knowledge of the robbery, or whether he told Brown and Green where to find the getaway vehicle. "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the

8

defense, and forcefully assert reasonable inferences from the evidence." Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005). The prosecutor's inference that Petitioner was aware of the planned robbery and was involved in procuring and locating the getaway vehicle was supported by testimony adduced at trial, including Myers's testimony that Petitioner called her for a ride to Déjà Vu and told her to wait across the street, as well as Green's testimony that Petitioner was involved in a conversation about robbing the club.

Petitioner also claims that the prosecutor committed misconduct by vouching for the credibility of prosecution witnesses, as well as calling Petitioner a liar. Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and expressing a personal opinion regarding the accused's guilt "pose two dangers: [i] such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and [ii] the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." United States v. Young, 470 U.S. 1, 18-19 (1985).

In this case, the trial court found no improper vouching, and the Court agrees with the state court's assessment of the prosecutor's remarks. The prosecutor's arguments simply explored the evidence presented at trial and various witnesses' motives for testifying. The prosecutor did not imply any special knowledge about the witnesses' veracity. In addition, introduction of the terms of Green's and Brown's plea agreements did not amount to improper vouching. The prosecutor elicited the terms of the plea agreement, but did not imply any personal knowledge about whether the witnesses were adhering to the requirement that they testify truthfully.

With regard to Petitioner's argument that the prosecutor committed misconduct in calling him a liar, it is clearly inappropriate for a prosecutor to make personal attacks on a defendant. See, e.g., United States v. Collins, 78 F.3d 1021, 1040 (6th Cir. 1996). However, prosecutors may highlight inconsistencies or inadequacies in the defense, Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense's theory. United States v. Forrest, 402 F.3d 678, 686 (6th Cir. 2005). Even though "[a] prosecutor should not give his own opinion as to the credibility of witness[,] . . . this does not mean that the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying." West v. Bell, 550 F.3d 542, 565 (6th Cir. 2008). A prosecutor may argue from the facts that a witness is (or is not) worthy of belief. See Portuondo v. Agard, 529 U.S. 61, 69-71 (2000). "Where there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." Collins, 78 F.3d at 1040. The prosecutor's references in this case to Petitioner as a liar were permissible attacks on Petitioner's credibility. Petitioner has failed to demonstrate that the prosecutor's argument was improper, or that it rendered his trial fundamentally unfair.

Therefore, the Court concludes that the trial court's decision that the prosecutor did not engage in misconduct was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on his first claim.

### C. Claim Two: Ineffective Assistance of Trial Counsel

Petitioner next seeks habeas relief on the claim that his trial counsel was ineffective. Specifically, he argues that counsel was ineffective in failing to object to the alleged instances of prosecutorial misconduct discussed above, failing to object to the trial court's summation to the jury after a recording error, and failing to excuse two jurors on the ground they were not impartial. Petitioner raised these claims for the first time in his motion for relief from judgment.

The trial court issued a lengthy, well-reasoned opinion, which the Court finds was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

To establish that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." Id. at 689. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689.

Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792). The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

11

On habeas review, the Court applies a "doubly deferential judicial review" to <u>Strickland</u> claims. The Court considers not "whether defense counsel's performance fell below the <u>Strickland</u> standard," but whether "the state court's application of the <u>Strickland</u> standard was unreasonable." <u>Harrington</u>, 562 U.S. at 101. The "doubly deferential judicial review" applied to <u>Strickland</u> claims, <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009), means that, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington</u>, 562 U.S. at 105.

The Michigan trial court denied Petitioner's claim that counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct, because no misconduct occurred. As discussed above, the trial court's decision in this regard was not unreasonable or contrary to federal constitutional precedent. Counsel, therefore, was not ineffective for failing to raise meritless objections. <u>See</u> <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1386 (2012) (finding counsel did not act ineffectively in failing to raise a meritless objection).

With respect to the claim that counsel should have objected to the trial court's summary of remaining ineffective assistance of counsel claims, the trial court found counsel was not ineffective. On the third day of trial, it was discovered that the recording equipment malfunctioned for approximately one hour, failing to record defense counsel's opening statement and Petitioner's testimony. When the malfunction was discovered by the court, the trial court judge summarized the opening statement and Petitioner's testimony. Contrary to Petitioner's assertion, the record clearly shows that this summary was made outside the jury's presence. The judge gave counsel for both parties the opportunity to clarify or supplement the summary.

Defense counsel clarified a few points and then expressed her satisfaction with the court's summary, calling it "excellent." See 9/21/2007 Trial Tr. at 79 (cm/ecf page) (Dkt. 12-6).

In denying this claim on collateral review, the trial court found the summary accurately reflected the trial proceedings and, because counsel had an opportunity to clarify the record, no objection was necessary. The trial court's analysis of this claim afforded counsel the deference required by Strickland, considered the fairness to Petitioner, and the absence of any evidence of prejudice to the defense. Therefore, the Court finds that Petitioner has not established that the trial court's analysis was contrary to or an unreasonable application of Strickland.

Finally, Petitioner argues that his defense attorney was ineffective in failing to excuse two jurors on the basis that they were not impartial. First, Juror 14 alerted the court, after Charles Harris's testimony, that he had a business relationship and friendship with Harris. The court questioned Juror 14 outside the other jurors' presence. Juror 14 testified that he had not been acquainted with Harris for approximately five years, and that nothing about his previous relationship with Harris would impede his ability to be fair and unbiased. The trial court found no reason to excuse Juror 14, and defense counsel concurred in this assessment. Juror 12 acknowledged during voir dire that he had been the victim of an armed robbery. Defense counsel questioned him extensively about his experience, and Juror 12 expressed an ability to be impartial despite this experience. Defense counsel did not move to excuse this juror. The trial court recognized that jurors with "real life experiences" can be excellent jurors, and that counsel was not ineffective for failing to excuse this juror on the basis of his past experiences. 2/10/2011 Op. at 12 (cm/ecf page) (Dkt. 12-13).

To show that his attorney was ineffective in failing to strike either of these jurors, Petitioner must show that one of the jurors "was actually biased against him." Johnson v.

13

Luoma, 425 F.3d 318, 328 (6th Cir. 2005); accord Tinsley v. Million, 399 F.3d 796, 805 (requiring a showing of actual bias to satisfy Strickland's prejudice prong). Both the trial court and defense counsel accepted the jurors' statements that they could be impartial. Petitioner has failed to present any evidence of actual (or implied) bias, nor can the Court discern any evidence of bias in the record. In the absence of evidence of bias, Petitioner cannot show that counsel performed deficiently in failing to use a peremptory challenge or move to strike for cause either of these jurors.

Therefore, the Court concludes that Petitioner is not entitled to habeas relief on his second claim.

### D. Claim Three: Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal his prosecutorial misconduct and ineffective assistance of counsel claims. The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, Petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. Strickland, 466 U.S. at 687.

The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the

14

hallmark of effective appellate advocacy," Smith v. Murray, 477 U.S. 527, 536 (1986), and may be "the best type of performance." Jones v. Bell, __ F. App'x __, 2015 WL 4758225, at *4 (6th Cir. Aug. 13, 2015) (emphasis in original). Thus, appellate counsel need not raise every nonfrivolous issue, but he or she must "exercise reasonable professional judgment." Joshua v. DeWitt, 341 F.3d 430, 441 (6th Cir. 2003) (citing Jones, 463 U.S. at 751-753).

Although the state court denied Petitioner's ineffective assistance of appellate counsel claim on the merits without any substantive discussion, the Court must still apply AEDPA deference to the state court's decision. Harrington, 562 U.S. at 98-99. Petitioner argues that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel and prosecutorial misconduct claims on direct appeal. Those issues have no merit, and appellate counsel need not raise non-meritorious claims on appeal. Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010) ("Appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit.").

Therefore, the Court concludes that Petitioner is not entitled to habeas relief on his third claim.

**C. Claim Four: Sufficiency of the Evidence**

In his fourth habeas claim, Petitioner argues that the evidence in support of his armed-robbery conviction under an aiding and abetting theory was insufficient. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). On direct review, the court's review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]wo layers of deference apply to . . . claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-205 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at 319)) (emphasis in original). Second, if the Court concludes "that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. (emphasis in original). In sum, for a federal court on habeas review, "the only question under Jackson is whether [the state court's holding] was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per curiam).

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim on direct review. Under Michigan law, to convict a defendant of a crime under an aider and abettor theory, the prosecution must present evidence that: "'(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended its commission at the time that the defendant gave aid and encouragement.'" Reece, 2009 WL 1101523, at *1 (quoting People v. Carines, 597 N.W.2d 130, 135 (Mich. 1999)) (brackets omitted). The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. See O'Guin v. Foltz, 715 F.2d 397, 400 (6th Cir. 1983). The Michigan Court of Appeals considered

16

many factors in concluding that sufficient evidence had been presented to sustain Petitioner's convictions. Brown and Green both testified to conversations with Petitioner about robbing Déjà Vu prior to when the robbery occurred. They also testified that Petitioner supplied the gun and encouraged the robbery. Testimony also showed that Petitioner helped secure transportation, informed Brown and Green where the vehicle would be located after the robbery, and conferred with Brown and Green before they committed the robbery. Further, Petitioner fled with Brown and Green after the robbery and helped them dispose of clothing and the gun. Finally, the Michigan Court of Appeals noted that Petitioner's testimony that he did not aid anyone in robbing the club was contrary to Brown's and Green's, but found that the decision of whom to believe was within the province of the jury and not the reviewing court. Reece, 2009 WL 1101523, at *1.

The evidence in this case, when viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that Petitioner aided and abetted Green and Brown in the armed robbery. Under the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision was "so far out of line with the very general standard set forth in Jackson v. Virginia as to warrant granting [petitioner] habeas relief." Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

Therefore, the Court concludes that Petitioner is not entitled to habeas relief on his fourth claim.

### D. Claim Five: Exhaustion of State-Court Remedies

Finally, Petitioner asserts that all of his claims have been properly exhausted in state court. A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Respondent does not argue that Petitioner failed to exhaust his state court remedies, nor has the Court sua sponte raised the issue. Exhaustion of state-court remedies is a prerequisite for habeas corpus relief, but, it does not, itself, present an independent claim for relief.

Therefore, the Court concludes that this claim fails to state a claim appropriate for habeas review.

### E. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and concludes that reasonable jurists would not debate the Court's conclusion that the petition fails to state a claim upon which habeas relief may be granted.

Accordingly, a certificate of appealability is not warranted in this case.

### F.  Leave to Proceed In Forma Pauperis on Appeal

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed IFP on appeal. Id. at 764-765.

### V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 1), declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

SO ORDERED.

Dated:  September 3, 2015                           s/Mark A. Goldsmith
        Detroit, Michigan                           MARK A. GOLDSMITH
                                                    United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 3, 2015.

                                                    s/Carrie Haddon
                                                    Case Manager